# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MARTY W., substitute party )
for TONI W., )
)
    Plaintiff, )
)
  v. )    1:24CV1082
)
FRANK J. BISIGNANO, )
Commissioner of Social )
Security, )
)
    Defendant.[1] )

## MEMORANDUM OPINION AND ORDER
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Marty W. ("Plaintiff") brought this action on behalf of his deceased spouse Toni W. ("Claimant") pursuant to the Social Security Act (the "Act") to obtain judicial review of the final decision of Defendant, the Commissioner of Social Security (the "Commissioner"), denying Claimant's application for Disability Insurance Benefits ("DIB"). (Docket Entry 1.) The Commissioner has filed the certified administrative record (Docket Entry 5 (cited herein as "Tr. __")), and both parties have submitted dispositive briefs in accordance with Rule 5 of the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g) (Docket

---

[1] The United States Senate confirmed Frank J. Bisignano as the Commissioner of the Social Security Administration on May 6, 2025, and he took the oath of office on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank J. Bisignano should substitute as Defendant in this suit. Neither the Court nor the parties need take further action to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Entry 11 (Plaintiff's Brief); Docket Entry 13 (Commissioner's Brief)). For the reasons that follow, the Court will enter judgment for the Commissioner.[2]

## I. PROCEDURAL HISTORY

Claimant applied for DIB (Tr. 202-04, 212-13), alleging a disability onset date of June 7, 2014 (see Tr. 202, 212). Upon denial of that application initially (Tr. 98-106, 116-20) and on reconsideration (Tr. 107-15, 125-29), Claimant requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 130-32). Claimant, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 62-97.) The ALJ subsequently ruled that Claimant did not qualify as disabled under the Act. (Tr. 8-27.) The Appeals Council denied Claimant's request for review (Tr. 1-7, 198-201),[3] thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

---

[2] On consent of the parties, this "case [wa]s referred to [the undersigned] United States Magistrate Judge [] to conduct all proceedings . . ., to order the entry of judgment, and to conduct all post-judgment proceedings []herein." (Docket Entry 9 at 1.)

[3] Claimant died during the pendency of review by the Appeals Council (see Tr. 31, 51), and Plaintiff, as Claimant's surviving spouse, assumed Claimant's DIB claim, see 42 U.S.C. § 404(d)(1) (providing that, "[i]f any individual dies before any payment due h[er] under [the DIB progam] is completed, payment of the amount due . . . shall be made to the person, if any, who is determined by the Commissioner . . . to be the surviving spouse of the deceased individual" (dash and paragraph numbering omitted)); see also 20 C.F.R. § 404.503(b)(1) (same).

2

In rendering that decision, the ALJ made the following findings later adopted by the Commissioner:

1.    [C]laimant last met the insured status requirements of the . . . Act on December 31, 2019.

2.    [C]laimant did not engage in substantial gainful activity during the period from her alleged onset date of June 7, 2014 through her date last insured of December 31, 2019.

. . .

3.    Through the date last insured, [C]laimant had the following severe impairments: degenerative disc disease of the lumbar spine; psoriasis and obesity.

. . .

4.    Through the date last insured, [C]laimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5.    Through the date last insured, [C]laimant had the residual functional capacity to perform light work . . . except [she] could occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; but never climb ladders, ropes, or scaffolds or balance with balance as defined by the [Selected Characteristics of Occupations]. She could frequently reach, handle, and finger. She must avoid all exposure to unprotected heights and dangerous machinery.

. . .

6.    Through the date last insured, [C]laimant was unable to perform any past relevant work.

. . .

10. Through the date last insured, considering [C]laimant's age, education, work experience, and residual functional capacity, there were jobs that

existed in significant numbers in the national economy that [she] could have performed.

. . .

11. [ C]laimant was not under a disability, as defined in the . . . Act, at any time from June 7, 2014, the alleged onset date, through December 31, 2019, the date last insured.

(Tr. 13-22 (bold font and internal parenthetical citations omitted).)

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits."  Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).  However, "the scope of . . . review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).  Plaintiff has not established entitlement to relief under the extremely limited review standard.

## A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard."  Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

4

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

5

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," <u>Hall v. Harris</u>, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" <u>id.</u> (quoting 42 U.S.C. § 423(d)(1)(A)).[4] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." <u>Id.</u> "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." <u>Id.</u> (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a

---

[4] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." <u>Craig</u>, 76 F.3d at 589 n.1 (internal citations omitted).

6

'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity [('RFC')] to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[5] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]." Id. at 179.[6] Step four

---

[5] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

[6] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an

then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant  work"; if so, the claimant does not qualify as disabled.  <u>Id.</u> at 179-80.  However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." <u>Hall</u>, 658 F.2d at 264-65.  If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled.  <u>Hines</u>, 453 F.3d at 567.[7]

## B.  Assignment of Error

In Plaintiff's first and only assignment of error, he maintains that "the ALJ erred by failing to evaluate [Claimant]'s need for an assistive device when assessing the RFC."  (Docket

---

equivalent work schedule" (internal emphasis and quotation marks omitted)).  The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)."  <u>Hall</u>, 658 F.2d at 265.  "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (<u>e.g.</u>, pain)."  <u>Hines</u>, 453 F.3d at 562-63.

[7] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.  Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis.  <u>See, e.g.</u>, <u>Hunter</u>, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

8

Entry 11 at 5 (bold font and block formatting omitted).) In particular, Plaintiff notes that, "[p]rior to [Claimant's] hearing and in her [F]unction [R]eport, [she] indicated that she used a cane and that this was during her 'bad spells'" (id. (quoting Tr. 261)), "testified that standing and walking caused her to have significant pain" (id. (citing Tr. 81)), and "stated that she could be on her feet for about 20 minutes and that she dragged her right leg and had trouble walking" (id. (citing Tr. 83-84)). In Plaintiff's view, "[t]he medical evidence of record is supportive of [Claimant]'s statements." (Id.; see also id. at 5-6 (citing Tr. 400, 403, 417, 488, 507, 510, 515, 518, 520, 524, 705, 707-08, 716, 728, 733-34, 765, 772, 774, 777, 780, 786, 845, 923-34, 1188).) According to Plaintiff, "[d]espite the presence of th[at] evidence, the ALJ never discusse[d] the evidence concerning [Claimant]'s need for a handheld device and offer[ed] no analysis of th[at] contested function" in violation of Social Security Ruling 96-9p, Policy Interpretation Ruling Titles II and XVI: Determining Capability to Do Other Work - Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work, 1996 WL 374185 (July 2, 1996) ("SSR 96-9p"), which "require[d] the ALJ to determine whether or not a hand-held assistive device [wa]s medically necessary." (Id. at 6 (referencing SSR 96-9p, 1996 WL 374185, at *7).) Plaintiff further contends that, although "much of the evidence [he] cited [] occur[red] after [Claimant]'s [date last insured

9

('DLI')], [] medical evaluations made after a claimant's insured status has expired are not automatically barred from consideration and may be relevant to prove a disability arising before a claimant's [DLI]." (Id. at 8 (citing Bird v. Commissioner of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012)).) For the reasons that follow, Plaintiff's contentions miss the mark.

"To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96-9p, 1996 WL 374185, at *7 (emphasis added). Moreover, "the legal issue does not turn on whether a cane was 'prescribed' . . . but whether a cane was 'medically required.'" Spaulding v. Astrue, 379 F. App'x 776, 780 (10th Cir. 2010).

At the outset, Plaintiff's assertion that "the ALJ never discusse[d] the evidence concerning [Claimant]'s need for a handheld device and offer[ed] no analysis of th[at] contested function" in violation of SSR 96-9p (Docket Entry 11 at 6 (emphasis added)) entirely ignores the following analysis by the ALJ:

> The [ALJ ] considered the medical opinions from William Bell M.D. Dr. Bell opined that [ C]laimant could lift and carry less than 10 pounds occasionally and frequently. He opined that { C]laimant had the maximum ability to sit, stand and walk for less than 2 hours. He

10

opined that [ C]laimant had to periodically sit, stand and sit; could sit for 20 minutes and stand for 5 minutes before needing to change positions; and must walk around every 20 minutes for 5 minutes. In addition, he opined that [ C]laimant had to shift positions at will and needed to lie down at unpredictable intervals 2-3 times per 8 hours. In Dr. Bell's opinion, [ C]laimant could never to occasionally perform the listed postural activities, had no manipulative limitations, and [s]he had to avoid all exposure to fumes, odors, dusts and gases but avoid even moderate exposure to the remaining listed environmental restrictions. <u>He opined that [ C]laimant needed a cane to ambulate</u> and was limited in bending, kneeling and crawling. He also opined that [ C]laimant would be absent from work more than four days per month ([Tr. 779-80, 1141]). Dr. Bell opined further that [ C]laimant was totally and permanently disabled and could never resume work ([Tr. 1187-88]).

As an initial matter, <u>Dr. Bell's opinion that [ C]laimant was disabled and could never resume work is an issue reserved to the Commissioner, which is inherently neither valuable, nor persuasive. The [ALJ] finds the remainder of this opinion partially persuasive</u>. Dr. Bell's opinion was generally supported by his explanation that [ C]laimant had lumbar degenerative disc disease and chronic back pain ([Tr. 780, 1143, 1188). Moreover, <u>his opinion that [ C]laimant could never climb ladders, could occasionally climb stairs and that she was limited in stooping (bending), kneeling and crawling was generally consistent with the medical evidence that showed [she] had degenerative problems in her lumbar spine, had psoriasis and was obese ([Tr. 321, 345-46, 421, 483, 578, 617]). This was persuasive. Conversely, the remainder of his opinion was inconsistent with the evidence that showed [ C]laimant had normal strength, had normal reflexes, had normal sensation and had a normal gait ([Tr. 407, 421, 451, 472, 483, 493, 520]). Based on this evidence, the [ALJ] finds that limiting [ C]laimant to light work with the [] manipulative, postural and environmental limitations of th[e RFC] was sufficient. The [ALJ] was not persuaded by [Dr. Bell's] findings that differed from these limitations</u>.

(Tr. 20 (emphasis added).)

11

As the language emphasized above makes clear, the ALJ found "not persua[sive]" (id.) Dr. Bell's opinion that Claimant needed a cane to ambulate (see Tr. 780, 1143), based on that opinion's "inconsisten[cy] with the evidence that showed [ C]laimant had normal strength, had normal reflexes, had normal sensation and had a normal gait" (Tr. 20 (citing Tr. 407, 421, 451, 472, 483, 493, 520)). Significantly, the ALJ also observed that, although "[ C]laimant testified that she would drag her lower extremity and had issues with falling, . . . the record did not show that she reported problems with falls during the relevant period[,]" and "[she] had a normal gait in examinations" (Tr. 19 (citing Tr. 407, 421, 451, 472, 483, 493)) and, thus, "the [RFC] did not provide any further limitations" (id.). That discussion both A) satisfied the ALJ's obligation under SSR 96-9p to determine whether Plaintiff's cane use qualified as medically necessary, and B) supported the ALJ's omission of a cane requirement from the RFC. See Jackson v. Kijakazi, No. 1:20CV592, 2021 WL 3037436, at *5 (M.D.N.C. July 19, 2021) (unpublished) (rejecting "[the p]laintiff's argument that remand [wa]s required because the ALJ failed to explicitly address whether [the p]laintiff's need for a hand-held assistive device was medically necessary," where ALJ found consultative medical examiner's opinion that the plaintiff needed cane not consistent with record evidence including "full motor strength" and "no focal neurologic deficits" (some brackets and internal quotation marks

12

omitted)), <u>recommendation adopted</u>, 2021 WL 3710768 (M.D.N.C. Aug. 20, 2021) (unpublished) (Biggs, J).

Moreover, to the extent Plaintiff attacks that implicit finding by the ALJ that Claimant's cane use did not qualify as medically necessary, such a challenge also fails. Although Plaintiff points to Claimant's statement on a May 2021 Function Report that "[she] use[d a] cane if [she was] having a bad spell" (Docket Entry 11 at 5 (citing Tr. 261)), as well as other statements by Claimant to providers regarding her lower back symptoms (<u>see</u> <u>id.</u> at 5-6 (citing Tr. 81, 83-84, 400, 403, 417, 488, 772, 774)), Claimant's <u>subjective</u> statements do not constitute "medical documentation" sufficient to establish the medical necessity of her cane, SSR 96-9p, 1996 WL 374185, at *7. <u>See</u> <u>Hale v. Kijakazi</u>, No. 1:20CV277, 2021 WL 3625319, at *2 (W.D.N.C. Aug. 16, 2021) (unpublished) (holding that "[s]ubjective claims . . . are insufficient" to establish medical documentation of cane necessity required by SSR 96-9p (internal quotation marks omitted)); <u>Morrison v. Saul</u>, No. 3:20CV223, 2021 WL 795190, at *4 (W.D.N.C. Mar. 2, 2021) (unpublished) (holding that the plaintiff's "own lay testimony" that he needed cane "d[id] not provide medical documentation establishing that [he] needed the cane"); <u>Thomas H. v. Berryhill</u>, No. 4:17CV41, 2018 WL 10806837, at *8 (W.D. Va. Aug. 27, 2018) (unpublished) ("[The plaintiff]'s subjective belief that he needs a cane to walk and for stability due to muscle atrophy in

13

the right leg and pain in his legs and hips is not acceptable 'medical documentation' that could establish his underlying medical need to use a cane to aid in walking or standing." (quoting SSR 96-9p, 1996 WL 374185, at *7) (some internal quotation marks and citations omitted)), recommendation adopted sub nom. Harris v. Berryhill, 2019 WL 1372164 (W.D. Va. Mar. 26, 2019) (unpublished).

Furthermore, Plaintiff's reliance upon records where Claimant's providers noted her cane use (see Docket Entry 11 at 5-6 (citing Tr. 705, 707-08, 728, 733-34, 764-65, 845)) fails for two reasons. First, such reliance conflates Claimant's mere use of a cane with a provider's opinion regarding the medical necessity of such a device. See Thomas H., 2018 WL 10806837, at *8 ("The mere fact that [the plaintiff] sometimes presented to clinic appointments with a cane [] does not establish his underlying medical need to use that device. *Cf. Craig*, 76 F.3d at 590 n.2 ('There is nothing objective about a doctor saying, without more, "I observed my patient telling me she was in pain."')."). Second, all of those observations by providers of Claimant's cane use occurred well after her DLI of December 31, 2019 (see Tr. 705 & 707-08 (2/2/23), 728 (2/6/23), 733-34 (12/20/22), 764-65 (3/16/23); see also Tr. 845 (7/12/23 - merely noting Plaintiff's report of cane use and not observing actual cane use)), and, thus, do not support her argument that she required a cane to ambulate during

14

<u>the relevant period in this case</u> from her alleged onset date of June 7, 2014, to her DLI  of December 31, 2019.

Plaintiff nonetheless maintains that "medical evaluations made after a claimant's insured status has expired are not automatically barred from consideration and may be relevant to prove a disability arising before a claimant's [DLI]" (Docket Entry 11 at 8 (citing <u>Bird</u>, 699 F.3d at 340)), "because such evaluations can be 'reflective of a possible earlier and progressive degeneration'" (<u>id.</u> (quoting <u>Bird</u>, 699 F.3d at 341)).  Thus, Plaintiff asserts that "[Claimant]'s MRI documenting severe findings, abnormal examinations, and Dr. Bell's order for a 4-pronged cane all may relate back to the [relevant time period], when [Claimant] started receiving treatment for her back pain."  (<u>Id.</u> at 9 (space added).)

The facts of <u>Bird</u> distinguish that case from the instant matter.  In <u>Bird</u>, the plaintiff argued that the ALJ erred by failing to consider post-DLI evidence establishing that the plaintiff suffered from severe and disabling PTSD for many years prior to his DLI.  See <u>Bird</u>, 699 F.3d at 338-40.  Significantly, Plaintiff had not sought <u>any</u> medical treatment prior to his DLI, see <u>id.</u> at 339, and the post-DLI evidence "summarized evidence that [he] suffered from severe symptoms of PTSD before . . . his DLI," <u>id.</u> at 341, "indicated that [his] symptoms of PTSD had been ongoing since his [pre-DLI] return from military service in Vietnam," <u>id.</u>, and explained the impact of the plaintiff's PTSD on his ability to

15

maintain employment and social relationships during the period prior to the DLI, see id. at 342. The United States Court of Appeals for the Fourth Circuit "conclude[d] that the ALJ should have given retrospective consideration to the [post-DLI evidence]," id. at 341, and that "retrospective consideration of medical evidence [wa]s especially appropriate[,]" because "[the plaintiff]'s testimony . . . and a statement submitted by his wife to the Appeals Council buttress[ed] the medical evidence of [his] pre-DLI condition," id. at 342.

By contrast, in this case, Plaintiff sought treatment for her lumbar degenerative disc disease and psoriasis throughout the relevant period in this case, and none of that evidence reflected cane usage, falls, or gait instability. (See Tr. 391-499, 515-35, 551-71, 578-83, 607, 616-19.) The ALJ thus had sufficient pre-DLI evidence on which to assess Plaintiff's need for a cane prior to her DLI, rendering Bird inapposite. See Tolbert v. Colvin, No. 1:15CV437, 2016 WL 6956629, at *4 (M.D.N.C. Nov. 28, 2016) (unpublished) (Osteen, C.J.) ("Bird has [ ] repeatedly been found inapplicable where there was meaningful evidence of the claimant's disability or lack of disability during the DIB coverage period. This case is distinct from Bird. In Bird, as noted, the [plaintiff]'s post-DLI diagnosis of PTSD had not previously been diagnosed, nor were there medical records dated before his DLI. Here, however, the record contains well-documented, meaningful, and

16

direct evidence of [the p]laintiff's history of back, neck, and wrist problems prior to her DLI, which was fully considered by the ALJ." (internal footnote, citation, and quotation marks omitted)); Emrich v. Colvin, 90 F. Supp. 3d 480, 487 (M.D.N.C. 2015) (Schroeder, J.) ("This case is not like *Bird*. There is substantial evidence in the record concerning [the plaintiff]'s pre-DLI condition. . . . [A] linkage between [the plaintiff]'s pre- and post-DLI depression conditions was unnecessary because [she] was treated for depression throughout her disability insurance coverage period, and the ALJ considered whether that direct evidence supported a finding of disability."); Haila v. Colvin, No. 5:13CV377, 2014 WL 2475749, at *15 (N.D. Fla. June 3, 2014) (unpublished) ("Unlike the facts in *Bird*, there was sufficient medical evidence prior to the [DLI] for the ALJ to determine whether [the p]laintiff was disabled and the evidence after her [DLI] did not establish she was disabled prior to this date.").

Lastly, the remainder of the record citations upon which Plaintiff relies to support his assertion that Claimant required a cane for ambulation during the relevant period (see Docket Entry 11 at 5-6 (citing Tr. 507, 510, 515, 518, 520, 524, 716, 733-34, 777, 923-34)) do not, in fact, support that assertion. An MRI of Claimant's lumbar spine reflecting severe central canal stenosis and moderate to severe neural foraminal stenosis (see Tr. 716) and examination findings such as tenderness and limited range of motion

17

in Claimant's lumbar spine (<u>see</u> Tr. 517, 520, 523) demonstrated that she suffered from severe lumbar degenerative disc disease, which the ALJ acknowledged by A) finding Plaintiff's "degenerative disc disease of the lumbar spine" a "severe" impairment at step two of the SEP (Tr. 14) and B) by limiting Plaintiff to light work with extensive postural limitations (<u>see</u> Tr. 17).[8]  Those findings, however, did not establish that Claimant <u>required a cane to ambulate</u> during the relevant period in this case.

In light of the foregoing analysis, Plaintiff's first and sole assignment of error fails as a matter of law.

### III. CONCLUSION

Plaintiff has not established an error warranting remand.

**IT IS THEREFORE ORDERED** that the Commissioner's decision finding no disability is **AFFIRMED**, and that this action is **DISMISSED** with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

April 27, 2026

---

[8] Plaintiff additionally relies on findings such as "a positive straight leg raise on the right" (Docket Entry 11 at 6 (citing Tr. 507)), "difficulty with [Claimant's] heel walk" (<u>id.</u> (citing Tr. 777)), and "an irregular[,] antalgic gait" (<u>id.</u> (citing Tr. 734)); however, those findings all significantly post-dated Plaintiff's date last insured (<u>see</u> Tr. 507 (3/9/21), 734 (12/20/22), 777 (8/19/22)), and, thus, do not support Claimant's need for a cane <u>during the relevant period in this case</u>.

18